UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEWIS RAMOND BUYCK,

                Petitioner,                       Case No. 1:15-cv-1339

v.                                            Honorable Janet T. Neff

CARMEN PALMER,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

      This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Over the course of about 90 minutes on September 24, 2012, Judge Carol F. Youngblood of the Wayne County Circuit Court heard the testimony of five witnesses on charges that Petitioner had assaulted two people with intent to murder them, in violation of MICH. COMP. LAWS § 750.83, attempted to murder five others, in violation of MICH. COMP. LAWS § 750.91, by creating an incendiary device, in violation of MICH. COMP. LAWS § 750.211a(1), and using it to attempt to burn a dwelling house, in violation of MICH. COMP. LAWS § 750.72. Judge Youngblood found Petitioner guilty on all nine charges. On November 8, 2012, the court sentenced Petitioner to concurrent terms of imprisonment of 18 years, 9 months to 31 years, 3 months on each of the assault with intent to murder and attempted murder counts; 5 to 15 years for possessing the incendiary device; and 2 to 5 years for attempted arson of a dwelling.[1] Petitioner is presently serving those sentences in the

---

[1] In a related but separate case, Petitioner pleaded guilty to larceny in a building, in violation of MICH. COMP. LAWS § 750.360; larceny, in violation of MICH. COMP. LAWS § 750.356; and breaking and entering with intent to commit larceny, MICH. COMP. LAWS § 750.110. On November 8, 2012, Judge Youngblood also sentenced Petitioner for those crimes to concurrent sentences of 10 months to 4 years; 10 months to 1 year, 11 months; and 10 months to 1 year, 11 months, respectively.

custody of the Michigan Department of Corrections at the Michigan Reformatory in Ionia, Michigan.

In his petition Petitioner raises two issues:

I.     MR. BUYCK WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO SECURE TWO ALIBI WITNESSES FOR TRIAL.

II.    THE TRIAL COURT'S DENIAL OF THE DEFENSE MOTION TO REOPEN THE PROOFS AFTER THE BENCH TRIAL, TO ALLOW FOR THE TESTIMONY OF TWO ALIBI WITNESSES– WITNESSES WHO VOLUNTARILY APPEARED AFTER TRIAL, AND WHOM DEFENSE COUNSEL FAILED TO SUBPOENA FOR TRIAL–THEREBY EXACERBATING A DENIAL OF MR BUYCK'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, SIXTH AMENDMENT RIGHT TO PRESENT WITNESSES, AND SIXTH AMENDMENT RIGHT TO PRESENT A DEFENSE.

(Pet., ECF No. 1, Page ID.4-5.)  Petitioner has exhausted his state court remedies with respect to each issue.

Petitioner filed his petition on December 23, 2015. On July 7, 2016, Respondent filed an answer to the petition, (ECF No. 11) and the state-court record, pursuant to Rule 5, RULES GOVERNING § 2254 CASES.  (ECF No. 12.)  Respondent's answer argues that the habeas petition should be denied because the grounds upon which it is based are meritless. Upon review and applying the AEDPA standards, I find that all habeas grounds are without merit.  Accordingly, I recommend that the petition be denied.

## **Procedural and Factual Background**

Judge Youngblood reviewed the testimony of the five witnesses in her opinion:

The defendant is charged with two counts of assault with intent to murder, five counts of attempted murder, the charge of manufacture of an incendiary device and attempted arson of a dwelling house.

Shaqueenah Engis testified that on November 6, 2011, she had known the defendant for about five months.  Mr. Buyck had been a friend of her ex-boy friend Dwight Brown.  He had been to her house more than a hundred times and he'd eat[en] meals with her and her six children.  Mr. Buyck and Mr. Brown ceased being friends when Mr. Brown suddenly left town and disappeared. She does not where he is.

On November 6, 2011, about 2:30 A.M., Mr. Buyck came to her house with a woman named Kenyetta.  Kenyetta is the current wife or girl friend of the father of one of her children.  She argued with Mr. Buyck, and Kenyetta said they would burn down her house. They both drove away.

About 20 minutes later, she heard the crunching of leaves outside and saw Mr. Buyck trying to light something in her front yard.  She looked outside and saw him lighting a stick in a bottle with fire.  She called to him, he responded that he hoped she and her children would die in the fire and he threw the bottle with the ignited stick in it at the front window.  The outside window pane was broken but not the inside window.   The grass in the front yard caught fire.   She called the fire department and police.  Both responded.

Ms. Engis' son Albert, age 14, also testified.  He was awake and in the living room area.  He testified similarly to his mother.  He saw–he, too, saw Mr. Buyck lighting a stick in a bottle.  He saw Mr. Buyck throw it at the window.  He heard Mr. Buyck say words similar to those described by his mother.

Lieutenant Dixon of the fire department confirmed that the fire department was called to Ms. Engis' home and that the grass was set on fire.  He confirmed that the bottle thrown at the window was filled with gas and it caught the grass on fire.

Mr. Buyck testified that he did not go to Ms. Engis' home the night of November 6, 2011, and he was not in the area.  He testified that he was at the home of his sister Toni Johnson, and his friend Porshia Berman was with him at 8271 Normile.  Mr. Buyck testified that he believed Ms. Engis was falsely accusing him of those crimes because she believed that he had broken into her house several weeks earlier.

The charge of assault with intent to commit murder requires the prosecutor to prove each of the following elements beyond a reasonable doubt: One, that the defendant

-3-

tried to physically injure Shaqueenah Engis and/or Albert Engis.  Two, that when the defendant committed the assault he had the ability to cause an injury or at least believed that he had the ability.  And, three, that the defendant intended to kill Shaqueenah Engis and/or Albert Engis.

The testimony of Shaqueenah and Albert Engis convince this Court beyond a reasonable doubt that the defendant did throw an incendiary Molotov cocktail-type device at the home of Ms. Engis.  He could see and he knew those two people were in the living room.  He threw it right at them.  He said he hoped they die.  While it was dark outside, these two people had known the defendant for months and had seen him and had seen him numerous times, including just a short time before this happened.

I find the defendant guilty of assault with intent to murder Shaqueenah Engis and Albert Engis.  This Court believes that Mr. Buyck also knew that Ms. Engis'–that Ms. Engis had five additional very young children living in the same house.  It was the middle of the night and Mr. Buyck knew these children would be asleep in bed.  Mr. Buyck's actions did attempt to cause the death of these children and his statements again express–expresses his desire that they all die.  This statement, along with the fact that Mr. Buyck obtained a bottle, filled it with gasoline and a wick-like device and then took it to Ms. Engis' home, does show premeditation and deliberation.

I find the defendant guilty of all five counts of assault with intent to murder.

Based on the above testimony, I also find the defendant guilty of possession of an incendiary device and attempted burning of a dwelling house.

(Trial Tr., ECF No. 12-2, PageID.235-239.)

Petitioner does not challenge the evidence that was admitted or the trial court's evaluation of that evidence.  Instead, he contends that his counsel was ineffective for failing to ensure that Petitioner's alibi witnesses would be present and testify at trial.  There is support in the record for the proposition that Petitioner intended to offer alibi witness testimony.  His counsel referenced the witnesses before opening statements:

We did file an alibi notice.  My two witnesses have not appeared in court. I did make contact with my client's aunt who was to make contact with them.  So if for some reason they walk in, I would just ask for two minutes to escort them somewhere else.

-4-

(*Id.*, PageID.165.)  After the prosecution rested, the court referenced the witnesses as well: "I think we'll just take a ten-minute break.  You can maybe see if your witnesses are here."  (*Id.*, PageID.218-219.)  After the break, Petitioner's counsel indicated that the witnesses had not arrived:

> Your Honor, neither of my alibi witnesses, Ton[i] Johnson or Portia Berman, have made it to court today.  I checked the hallway and this court.  It is now 11:30.  With that, I'm gonna ask that Mr. Buyck please proceed up to the front, swear yourself in with the Court.

(*Id.*, PageID.219.)

Petitioner testified that on the night in question he was at the home of his sister, Toni Johnson, with his roommate, Portia Berman.  (*Id.*, PageID.220.)  Initially, he could not remember where his sister's house was located.  (*Id.*)  But he knew it was far away from Ms. Egnis' house.  (*Id.*)  On cross-examination, the prosecutor provided Petitioner's sister's address as 8271 Normile, and Petitioner confirmed it.  (*Id.*, PageID.222.)  Petitioner indicated that his sister and roommate were aware of the trial because he had communicated with them about it a few weeks earlier.  (*Id.*, PageID.222-223.)

Sentencing was initially scheduled for October 25, 2012.  On that date, Petitioner's alibi witnesses appeared and counsel asked that sentencing be adjourned so that he could move to reopen the proofs.  (Sentencing Tr., PageID.244.)  The trial court denied the motion to reopen proofs:

> The defendant now moves this Court to allow the defense to reopen the case.  No case law has been presented that would support this request.  Further, no affidavits signed under oath have been presented to the Court, so there is no representation of what the evidence–what evidence any of these people would present and if, in fact, they were really alibi witnesses.
>
> No reason has been given as to the witnesses' failure to appear at trial.  There is no legal basis upon this record which would allow this Court to reopen the proofs.

*People v. Wheeler*, [152 N.W.2d 559 (Mich. Ct. App. 1967)] and *People v. Rogue*, 30 Mich App 668.

The defendant's motion is denied.

(*Id.*)  The court proceeded to sentence Petitioner as set forth above.

Petitioner, with the assistance of appointed appellate counsel, filed an appeal in the Michigan Court of Appeals raising the same issues he raises herein.  By opinion issued April 8, 2014, the court of appeals affirmed the trial court's convictions and sentences.  (Mich. Ct. App. Op., ECF No. 12-4, PageID.252-254.)  Petitioner filed a pro per application for leave to appeal in the Michigan Supreme Court, raising the same issues.  By order entered September 29, 2014, the supreme court denied leave to appeal.  Petitioner then filed his petition seeking habeas relief in this Court.

## **Standard of Review**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 132 S. Ct. 38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a

prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## Discussion

I.    Ineffective assistance of counsel

Petitioner maintains that his trial counsel rendered ineffective assistance in violation of the Sixth Amendment when he failed to secure the presence of the alibi witnesses at trial. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also*

-8-

*Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Counsel's failure to subpoena the witnesses is not, on its face, unreasonable. Petitioner had spoken with the witnesses and informed them regarding the trial and the need for their testimony. Petitioner's aunt, before trial, had indicated to counsel she would again inform the witnesses of the need to testify. The witnesses were Petitioner's sister and his roommate. They were not hostile to Petitioner and there was no reason to believe they would not appear voluntarily. Nonetheless, the Michigan Court of Appeals, relying on the *Strickland* standard, skipped over the

analysis of counsel's conduct and concluded, whether or not counsel's performance was deficient, that Petitioner had failed to demonstrate the requisite prejudice:

> Defendant asks this Court to assume that the alibi witnesses' testimony would have been that defendant was not at Shaqueenah Egnis's house because defendant was with them at a different location at the time of the crime. However, there was no affidavit filed by either alibi witness in support of this assertion. *See People v Pickens*, 446 Mich 298, 327; 521 NW2d 797 (1994). Therefore, it would be pure speculation to assume that the outcome of the proceedings would have been different had the testimony been given. Thus, defendant has failed to show that there is a reasonable probability that the result of the proceeding would have been different if the alibi witnesses testified. [*People v.*] *Lockett*, 295 Mich App at 187[, 814 N.W.2d at 307]. Accordingly, defendant's ineffective assistance claim must fail.

(Mich. Ct. App. Op., ECF No. 12-4, PageID.253.)

The state court's resolution is neither contrary to nor an unreasonable application of clearly established federal law. Petitioner offers nothing to support his speculation that the testimony of his sister and roommate would have been favorable to him. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991)

(footnote omitted).[2]  Petitioner has failed to establish entitlement to habeas relief grounded on his

ineffective assistance of counsel claim.

II.    Trial court's failure to reopen proofs to admit the alibi witnesses' testimony

Petitioner next contends that the trial court violated his Sixth Amendment right to

present witnesses when it refused to reopen proofs to permit the alibi witnesses to testify.    The

Supreme Court has determined that a criminal defendant has the right to a "meaningful opportunity

to present a complete defense."  *California v. Trombetta*, 467 U.S. 479, 485 (1984), *quoted in*

*Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006).  The right is derived from the Sixth Amendment

rights to compel and confront witnesses and from the Due Process Clause of the Fourteenth

Amendment.  *See Holmes*, 547 U.S. at 324; *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Chambers*

*v. Mississippi*, 410 U.S. 284, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("Just as an

accused has the right to confront the prosecution's witnesses for the purpose of challenging their

---

[2]*See also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said.  Speculation cannot suffice to establish the requisite prejudice."); *Neverson v. Farquharson*, 366 F.3d 32, 45 (1st Cir. 2004) ("[H]e has not offered any evidence of what that person would have said, let alone shown that the lack of such testimony materially prejudiced his defense.");  *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3rd Cir. 1991) ("Zettlemoyer cannot meet his burden . . . based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense."); *Goins v. Warden, Perry Corr. Inst.*, 576 F. App'x 167, 173 (4th Cir. 2014) ("[Petitioner's] failure to [show] what an expert witness would have testified regarding the mental health evidence . . . reduces any claim of prejudice to mere speculation and is fatal to his claim."); *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must . . . set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) ("Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result.") (internal citations omitted); *United States v. Vazquez-Garcia*, 211 F. App'x 544, 546 (8th Cir. 2007) ("Recognizing the deferential standard when reviewing the conduct of counsel, we decline to find prejudice in this situation when there is no evidence other than speculation to support the finding."); *Smith v. Adams*, 506 F. App'x 561, 565 (9th Cir. 2013) ("Smith merely speculates as to the expert testimony that could have been produced, but '[s]peculation about what an expert could have said is not enough to establish prejudice.'"); *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) ("This prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'").

testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process law.").

The Supreme Court, however,  repeatedly has recognized that the right to present a defense is subject to reasonable restrictions.  *See United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (the Sixth Amendment does not confer on the accused an "unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers*, 410 U.S. at 295; *see also Wong v. Money*, 142 F.3d 313, 325 (6th Cir. 1998).

> [S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.  Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve.  Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

*Scheffer*, 523 U.S. at 308 (internal citations omitted).

The court of appeals concluded the trial court had not abused its discretion in refusing to reopen the proofs.  The court concluded that the trial court's refusal to reopen proofs was supported by a five factor state-law test.  (Mich. Ct. App. Op., ECF No. 12-4, PageID.253.)  The state-court's refusal to reopen the proofs appears to be reasonable, proportionate, and non-arbitrary within the meaning of *Scheffer*, 523 U.S. at 308.  The United States Supreme Court has never hinted, much less held, that a state court must reopen its proofs after a verdict under any circumstances. And the entry of a verdict undoubtedly constitutes a reasonable restriction on a defendant's right to introduce evidence in his own defense. Accordingly, the state-court's determination was neither contrary to nor an unreasonable application of established Supreme Court precedent.

-12-

Moreover, even if refusing to reopen the proofs were constitutional error, Petitioner would have to demonstrate the error was harmful:

> For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " *Brecht*, 507 U.S., at 637, 113 S.Ct. 1710 (quoting *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). There must be more than a "reasonable possibility" that the error was harmful. *Brecht, supra*, at 637, 113 S.Ct. 1710 (internal quotation marks omitted). The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman*, 525 U.S. 141, 146, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998) (per curiam ).

*Davis v. Ayala*, 135 S. Ct. 2187, 2197-2198 (2015). As set forth fully above, Petitioner has failed to demonstrate that the exclusion of his "alibi" witnesses resulted in prejudice to him. Accordingly, Petitioner has failed to show his entitlement to habeas relief.

## Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. See *Slack v. McDaniel*, 529 U.S. 473 (2000).

Date:  March 14, 2017                                    /s/ Ellen S. Carmody
                                                         ELLEN S. CARMODY
                                                         United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).